```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

_____
                               )
UTAHAMERICAN ENERGY, INC.,     )
                               )
          Plaintiff,           )
                               )
     v.                        )    Civil Action No. 08-1780 (RWR)
                               )
MINE SAFETY AND HEALTH         )
ADMINISTRATION,                )
                               )
          Defendant.           )
_____)
```

## MEMORANDUM OPINION AND ORDER

Plaintiff Utahamerican Energy, Inc. ("UEI") brings this action against the Mine Safety and Health Administration ("MSHA"), alleging a violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, arising out of UEI's request for documents regarding the Crandall Canyon Mine. The parties have filed cross-motions for summary judgment. Because MSHA's search for documents construed too narrowly UEI's request and was not reasonably likely to locate all responsive documents, the parties' cross-motions for summary judgment will be denied without prejudice to refiling after MSHA conducts an adequate search for responsive documents.

### BACKGROUND

On August 6, 2007, the Crandall Canyon Mine ("the mine") in Huntington, Utah, partially collapsed, killing six miners. During a rescue mission ten days later, the mine partially

collapsed for a second time, killing three rescuers. (Pl.'s Stmt. of Material Facts as to Which There Is No Genuine Issue ("Pl.'s Stmt.") ¶ 1.) Genwal Resources, Inc., a subsidiary of UEI, operated the mine. (Am Compl. ¶ 2.) In response to the collapses, several government entities began investigating the events leading to the accidents, the accidents themselves, and the rescue process. The Office of the Inspector General ("OIG") at the U.S. Department of Labor ("DOL"), the Chairman of the U.S. Senate Committee on Health, Education, Labor and Pensions ("Senate Committee"), and the Chairman of the U.S. House of Representatives Committee on Education and Labor ("House Committee") all conducted investigations. (Pl.'s Stmt. ¶ 2.)

Each sought documents from MSHA. OIG requested documents from 2006 and 2007 relating to inspections completed at the mine, hazardous condition complaints received about the mine, and safety citations issued at the mine, and documents without date restriction related to MSHA's approval of mining at the Crandall Canyon site. (Def.'s Mem. of P. & A. in Opp'n to Pl.'s Cross-Motion for Summ. J. and in Reply to Pl.'s Opp'n to Def.'s Mots. for Partial Summ J. ("Def.'s Opp'n & Reply"), 2d Suppl. Silvey Decl., Attachs. Referenced in ¶ 3, Lewis Mem. at 1-2.) The Senate Committee requested, among other information, all documents stored in a comprehensive file about the mine, documents relating to petitions for changes to mine plans,

information relating to inspections of the mine, documentation of meetings and communications between MSHA officials and various energy companies, Crandall Canyon mine maps and plans beginning in 2004, and other documents about the mine from 2006 and 2007. (Id., Attachs. Referenced in ¶ 3, Kennedy Letter at 3-7.) Following up on its initial request, the Senate Committee also requested documents relating to MSHA's emergency response and rescue effort. (Id., Kennedy and Murray Suppl. Letter.) The House Committee requested documentation of communications between DOL, of which MSHA is part, and representatives of various energy companies beginning in 2001; minutes from those meetings; mine records in a specific database relating to events between 2001 and 2007; the employment record of the MSHA District Manager for the district in which the mine was located; and any complaints made to DOL about the mine beginning in 2001. (Id., Attachs. Referenced in ¶ 3, Miller Letter at 1-2.) Following up on its initial request, the House Committee also requested documents related to DOL's role in the rescue efforts. (Id., Miller Suppl. Letter.) The House Committee subpoenaed all documents regarding communications related to the mine beginning in March 2006 and communications between the CEO of the company that owns the mine and various DOL officials. (Id., Attachs. Referenced in ¶ 3, Subpoena Schedule ¶¶ 1-2.)

On September 25, 2007, UEI sent a letter to MSHA requesting documents under FOIA. UEI asked that MSHA produce "[a]ny and all documents in the actual or constructive possession of [MSHA]," including emails, "which relate in any way to the Crandall Canyon Mine[.]" (Pl.'s Stmt. ¶ 9; Am. Compl., Ex. A.) UEI also requested that MSHA produce all documents that related in any way to the two accidents at the mine, and which had been or would be forwarded to the Senate Committee, House Committee, or OIG. (Id.)

"[S]hortly before MSHA received UEI's September 25, 2007 FOIA request, MSHA had already initiated a search for [non-email] documents that included those requested by UEI as part of MSHA's efforts" to respond to the OIG and Congressional investigations. (Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Partial Summ. J., Docket #18 ("Def.'s Non-email Mem."), Silvey Decl. ¶ 10.) The agency sent "[e]-mail requests to the affected Coal Mine Safety and Health Districts and other MSHA program areas that may have had responsive documents[.]" (Id. ¶ 10.) MSHA also sent emails to appropriate managers and other individuals asking for documents concerning the mine, and it followed up with "key district contacts" to complete the search process. (Id.) Two days before MSHA's response to UEI's request was due, UEI contacted MSHA on the status of its request and offered to receive a partial response as an interim measure. (Pl.'s Stmt.

¶ 10.)  After several exchanges, UEI and MSHA agreed to a partial disclosure of documents relating to the mine, including the portion that MSHA had submitted previously to the Senate Committee, pending the continued processing of UEI's request.  (Id.; Am. Compl., Ex. B.)  Three months later, MSHA produced the partial documents promised as an interim measure and redacted information in those documents under various FOIA exemptions.  (Pl.'s Stmt. ¶ 11; Am Compl., Ex. C.)  However, MSHA did not provide an index or any specific explanation as to what documents were redacted or why.[1]  (Am. Compl., Ex. C.)

In addition to its search for non-email documents, MSHA initiated its search on September 28, 2007 for emails related to the mine accidents in response to the House Committee subpoena before it received UEI's FOIA request.  (Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Partial Summ. J., Docket #23 ("Def.'s Email Mem."), Silvey Suppl. Decl. ¶ 7.)  The agency's "Office of Program Evaluation and Information Resources began a search for e-mails from all MSHA employees identified as having been involved 'either directly or indirectly with the Crandall Canyon event[,]'" using the terms "Crandall," "Murray," and "Agapito" to

---

[1] After UEI filed its complaint, MSHA made additional incremental responses to UEI's request.  (Pl.'s Stmt. ¶¶ 22, 24, 28-30.)

generate responsive documents.² MSHA instructed its officials to search for emails that related to the Crandall Canyon Mine accident without date limitations. (Id.) This search generated over 300,000 email results responsive to the Congressional subpoena. MSHA informed UEI of the large volume and high associated review costs of its email search result and proposed to UEI the possibility of negotiating a reduced email production. UEI agreed to limit the search for emails to MSHA officials Richard Stickler, Kevin Stricklin, and Allyn Davis.³ (Id. ¶ 9.)

UEI brought this action complaining of improper redactions and incomplete production. MSHA has filed two motions for partial summary judgment, one with respect to all responsive documents except emails, and one with respect to emails,⁴ arguing

---

² "The term 'Crandall' was used because the accidents occurred at the Crandall Canyon Mine. The term 'Murray' was used because Robert Murray, President of Murray Energy Corporation, is the owner of Crandall Canyon Mine. The term 'Agapito' was used because Agapito Associates, Inc. was a contractor at Crandall Canyon." (Def.'s Email Mem., Silvey Suppl. Decl. ¶ 7 n.1.)

³ Richard Stickler is the former Assistant Secretary of Labor for Mine Safety and Health, Kevin Stricklin is the Administrator for the Coal Mine Safety and Health Division, and Allyn Davis is the District Manager of the Coal Mine Safety and Health Division for the district in which the Crandall Canyon mine is located. (Def.'s Email Mem., Silvey Suppl. Decl. ¶ 9.)

⁴ Neither motion for partial summary judgment properly seeks summary judgment on an entire claim in the complaint because the plaintiff does not allege separate claims for the email and non-email documents. See LaPrade v. Abramson, Civil Action No. 97-10 (RWR), 2006 WL 3469532, at *8 (D.D.C. Nov. 29, 2006) (holding that under Rule 56, a "[j]udgment may not be entered as to a fact or an element of a claim"). However, the two motions together

that it has conducted an adequate search in response to UEI's FOIA request and has disclosed all non-exempt documents responsive to UEI's request. UEI has filed a cross-motion for summary judgment, arguing that MSHA's search was inadequate and seeking "disclosure of additional responsive information MSHA has not produced or improperly continues to withhold from disclosure." (Pl.'s Cross-Mot. for Summ. J. & Opp'n to Def.'s Mots. for Partial Summ. J. ("Pl.'s Mot.") at 1.)

## DISCUSSION

Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009). The burden falls on the moving party to provide a sufficient factual record that demonstrates the absence of a genuine issue of material fact. See Beard v. Banks, 548 U.S. 521, 529 (2006). A court must draw all reasonable inferences from the evidentiary record in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In a FOIA suit, an agency is entitled to summary judgment if it demonstrates that no material facts are in dispute and that all information that falls within the class requested either has been produced, is unidentifiable,

---

seek summary judgment on all the claims in UEI's complaint and therefore will be considered.

or is exempt from disclosure. Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisburg v. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). A district court must conduct a *de novo* review of the record in a FOIA case, and the agency resisting disclosure bears the burden of persuasion in defending its action. 5 U.S.C. § 552(a)(4)(B); see also Long v. Dep't of Justice, 450 F. Supp. 2d 42, 53 (D.D.C. 2006).

FOIA requires that government agencies make good faith efforts to conduct reasonable searches for all records that are responsive to FOIA requests. Baker & Hostetler LLP v. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006). What constitutes a reasonable search will vary from case to case, Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990), but an agency must construe the scope of a request liberally. Nation Magazine, Wash. Bureau v. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995). An agency must demonstrate that its good faith search effort used "'methods which can be reasonably expected to produce the information requested.'" Baker & Hostetler LLP, 473 F.3d at 318 (quoting Nation Magazine, 71 F.3d at 890). A search's adequacy is not determined by its results, but by the reasonableness of the method, Casillas v. Dep't of Justice, 672 F. Supp. 2d 45, 48 (D.D.C. 2009), since "particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." Iturralde v. Comptroller of

Currency, 315 F.3d 311, 315 (D.C. Cir. 2003). An agency is entitled to use detailed non-conclusory affidavits or declarations that are submitted in good faith to show that the search it conducted in response to a FOIA request is adequate. Steinberg v. Dep't of Justice, 23 F.3d 548, 551-52 (D.C. Cir. 1994) (stating that the affidavits or declarations must describe "what records were searched, by whom, and through what process"). "[I]nitial delays in responding to a FOIA request are rarely, if ever, grounds for discrediting later affidavits by the agency." Iturralde, 315 F.3d at 315. However, "'[w]here the agency's responses raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory, summary judgment in the government's favor would usually be inappropriate.'" Wilderness Soc'y v. Bureau of Land Mgmt., Civil Action No. 01-2210 (RBW), 2003 WL 255971, at *5 (D.D.C. Jan. 15, 2003) (quoting Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)).

I. ADEQUACY OF SEARCH FOR NON-EMAIL DOCUMENTS

UEI argues that MSHA's search was inadequate because it centered the search around the Congressional and OIG requests for documents, and not around UEI's FOIA request. (Pl.'s Mot. at 14.) MSHA responds that the searches in response to the Congressional and OIG requests were "extremely broad[,]" and that MSHA had already "'searched in the logical locations in which

other documents responsive to UEI's request reasonably would be located.'" (Def.'s Opp'n & Reply at 4-5 (quoting 2d Suppl. Silvey Decl. ¶ 6).) However, MSHA began its search in response to the Congressional and OIG requests, and it did not modify the parameters of the search to accommodate UEI's broader FOIA request. (See Def.'s Non-email Mem., Silvey Decl. ¶¶ 10-12; Def.'s Email Mem., Silvey Suppl. Decl. ¶¶ 6-9.)

MSHA's search in response to the OIG and Congressional requests contained subject matter and time restrictions that were absent in UEI's FOIA request, which sought "[a]ny and all documents in the actual or constructive possession of [MSHA] which relate in any way to the Crandall Canyon Mine[.]" (Pl.'s Stmt. ¶ 9; Am. Compl., Ex A.) OIG limited its request to documents relating to inspections completed at the mine, hazardous condition complaints received about the mine, safety citations issued at the mine, and MSHA's approval of mining at the Crandall Canyon site. (Def.'s Opp'n & Reply, 2d Suppl. Silvey Decl., Attachs. Referenced in ¶ 3, Lewis Mem. at 1-2.) Although the Senate Committee's request was far broader than that of OIG, the Senate Committee limited its request for documents relating to the mine to those stored in particular files, those relating to specific subject matters, such as mine plans and inspections, and those memorializing meetings and communications between MSHA officials and various energy companies. (Id.,

Attachs. Referenced in ¶ 3, Kennedy Letter at 3-7.)  Moreover, most requests by the Senate Committee contained date restrictions.  The House Committee's request was also limited in scope.  Chairman George Miller limited the request to documentation of communications between and minutes of any meetings involving DOL and representatives of various energy companies, records in a specific database related to the mine, the employment record of the MSHA District Manager for the district in which the mine was located, and documentation of any complaints made to DOL about the mine.  (Id., Attachs. Referenced in ¶ 3, Miller Letter at 1-2.)  Additionally, the requests contained date restrictions; MSHA did not have to search for documents created before 2001.  Lastly, the Congressional subpoena was limited in scope and sought information only from 2001 to 2007.  (Id., Attachs. Referenced in ¶ 3, Subpoena Schedule ¶¶ 1-2.)

   The scope and date limitations contained in the OIG, Senate, and House Committee requests and the subpoena prevent the search in response to those requests from necessarily satisfying the FOIA request.  Because the record does not show that MSHA readjusted its original search parameters to satisfy the broader FOIA request (see Def.'s Non-email Mem., Silvey Decl.), which contained no subject matter restrictions -- other than that the documents relate to the mine -- and no date restrictions, MSHA's

search was not reasonably calculated to produce all documents responsive to UEI's request.  Thus, MSHA's search was not adequate.  See Wilderness Soc'y, 2003 WL 255971, at *5 (concluding that agency's search was inadequate because "responsive documents [possibly maintained] in the locations searched may not have been produced as a result of the [agency's] narrow interpretation of plaintiffs' request"); see also Campbell v. Dep't of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998) (noting that "the court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception").[5]

## II.  ADEQUACY OF SEARCH FOR EMAILS

UEI argues that MSHA's search for emails was inadequate because MSHA failed to use the term "Genwal" as one of its search terms, narrowly construed the email request during the search instructions to its officials, and failed to search the files of Gary Jensen, the MSHA inspector who was killed during the rescue mission.[6]  (Pl.'s Reply at 6.)  In response, MSHA argues that

---

[5] MSHA's argument that it reviewed the entire accident investigation file and released relevant documents, responsive and non-responsive to UEI's request (Def.'s Non-email Mem. at 4), is not sufficient to demonstrate the search's adequacy because that file concerned the accident specifically and was unlikely to contain general information about the mine, as UEI requested.

[6] This latter argument is without merit because UEI agreed to limit the search of emails to three MSHA officials after MSHA discovered that there were 300,000 responsive emails to its original request.  (Def.'s Email Mem. at 4-5; Pl.'s Mot., Klise

the parties negotiated the scope of the search, and that "the e-mail search in response to the Congressional subpoenas 'was extremely broad and sought all e-mails, without date restriction[.]'" (Def.'s Opp'n & Reply at 7-8 (quoting 2d Suppl. Silvey Decl. ¶¶ 4-5).)

In Canning v. Dep't of Justice, 919 F. Supp. 451, 460 (D.D.C. 1994), the plaintiff submitted a FOIA request to the Federal Bureau of Investigation seeking information on Charles Zimmerman, who was also known as Charles Cunningham. The FBI initially searched only the Zimmerman name and did not locate any responsive documents. Id. The plaintiff later produced evidence that the FBI knew at the time of the search that the individual was known by two different names, and the court held that the agency's search was inadequate because it did not include both

---

Decl. ¶ 4.) That MSHA did not search an email account the parties agreed would not be searched cannot render the search inadequate. See Coalition on Political Assassinations v. DOD, 12 F. App'x 13, 13-14 (D.C. Cir. 2001) (finding that agency conducted reasonable search in response to plaintiff's "limited request" using "specific code words" provided by the requester).

UEI further asserts that the search was inadequate because, among other reasons, emails released did not predate the dates of the accidents. (Pl.'s Mot. at 17.) However, MSHA recognized that this limitation prevented its search from being responsive to UEI's request, and it later provided the email results that predated the accident. (Def.'s Opp'n & Reply, 2d Silvey Suppl. Decl. ¶ 6.) MSHA recognized its own error and corrected the mistake, and the initial omission does not render the search inadequate, as there is no evidence that the omission was a result of the agency acting in bad faith. See Miller v. Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985) (noting that "[d]elay alone is significant only to the extent that evidence shows that the delay resulted from bad-faith").

names.  Id. at 461.  Here, MSHA's search did not include the term "Genwal," the name of the mine operator and a name by which industry officials sometimes referred to the mine.  (Pl.'s Reply at 6 (citing Crandall Canyon Mine Single Source Page, http://www.msha.gov/Genwal/CrandallCanyon.asp)) (last visited July 22, 2010) (linking to Report of Investigation, Fatal Underground Coal Burst Accidents August 6 and 16, 2007 at 128 ("At GENWAL [Crandall Canyon Mine] good success has been achieved . . ."), available at http://www.msha.gov/Fatals/2007/CrandallCanyon/FTL07CrandallCanyonNoAppendix.pdf.)  As in Canning, omitting from the search an alternative name by which the subject of the search is known renders the search inadequate, even if the search terms "Crandall," "Murray," and "Agapito" were likely to reveal many emails responsive to UEI's request.

That MSHA instructed its employees to search the files of MSHA employees who were involved directly or indirectly with the "Crandall Canyon event" (Def.'s Email Mem., Silvey Suppl. Decl. ¶ 7) and not the Crandall Canyon mine is a further infirmity in the email search.  Although the instructions included the phrase "without date limitation," this search narrowly construed UEI's request for all emails which relate in any way to the Crandall Canyon Mine.  Even though there was no date limitation to the employees' search, the search was not sufficiently reasonably

designed to discover documents that related generally to the mine but did not explicitly involve the accidents.  Thus, MSHA will be denied summary judgment due to the inadequacy of its search.  See Nation Magazine, 71 F.3d at 891-92 (reversing district court's grant of summary judgment in light of agency affidavit that was too conclusory to determine that the agency had construed liberally the plaintiff's FOIA request).

## CONCLUSION AND ORDER

MSHA's search for responsive non-email documents was not adequate because it based its search for non-email documents on the OIG and Congressional requests, which were narrower than UEI's FOIA request.  Further, MSHA's search for responsive emails omitted the critical term Genwal and failed to construe liberally UEI's request.  Accordingly, it is hereby

ORDERED that the defendant's motions [18, 23] for partial summary judgment, and the plaintiff's motion [27] for summary judgment be, and hereby are, DENIED without prejudice to refiling after MSHA conducts an adequate search.  It is further

ORDERED that the parties file by August 23, 2010 a joint status report and proposed order proposing a schedule by which the search will be completed.

SIGNED this 23rd day of July, 2010.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge